**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harry William BUDGE, Defendant-Appellant.**

**No. 15349.**

United States Court of Appeals Seventh Circuit.

April 20, 1966.

Rehearing Denied May 17, 1966.

Raymond J. Smith, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Archibald T. Le Cesne, Lawrence J. Cohen, Asst. U. S. Attys., Chicago, Ill., for appellee, Lawrence Jay Weiner, Asst. U. S. Atty., of counsel.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

Defendant was found guilty by a jury of having embezzled from a motor truck, goods that had been part of an interstate shipment of freight in violation of Title 18, U.S.C. § 659.

Prior to trial, defendant moved to suppress certain evidence. This motion was denied. Defendant's motions for a judgment of acquittal at the close of the Government's evidence and at the close of all of the evidence, were also denied.

The issues raised by defendant are: 1) Was there sufficient probable cause for the arrest and seizure; 2) Did the trial court err in failing to grant the motion to suppress evidence; 3) Did the Government fail to prove venue; 4) Did the trial court abuse its discretion by allowing the Government to reopen its proof to establish venue; and 5) Did the trial court err in allowing the Government to elicit a prior inconsistent statement from witness Gil under a claim of surprise.

Defendant Budge was a truck driver for Jones Transfer. On May 14, 1964, Budge was dispatched from the Jones Terminal in a truck loaded with various shipments recorded on eighteen waybills. Included in this cargo were three cartons of shoes in transit from Goldblatt Brothers, Rockford, Illinois, to George E. Keith, Brockton, Massachusetts. The merchandise listed on nine of the waybills, including the three cartons of shoes, was to be delivered to Lifschultz Fast Freight Company, Chicago.

Budge made his first stop at Lifschultz at about 8:35 a. m. Budge checked in with the Lifschultz receiving clerk and then reported to the checker who was to tally the shipments as they were unloaded. Budge then reported back to the receiving clerk who stamped all nine of the bills as received, after noting that all nine had been initialed by the checker.

A few minutes after Budge had moved on to his next delivery, the receiving clerk at Lifschultz discovered that one of the nine waybills was missing. This bill related to the three cartons of shoes in transit from Rockford, Illinois, to Brockton, Massachusetts. The receiving clerk immediately informed his superior, Joseph Sulli, of the missing waybill.

Before the FBI agents arrested defendant, they had been informed that the three cartons of shoes being shipped to George E. Keith of Brockton, Massachusetts, were on defendant's truck and should have been delivered to Lifschultz

Terminal in Chicago. They knew these three cartons were part of the earlier shipment that defendant had delivered to Lifschultz on the same day, and that someone had practiced a deception involving the waybill for these three cartons.

Between 2:30 and 3 P.M. on May 14, 1964, FBI agents Parfet and Lee, and Mr. Sulli, the assistant operations manager at Lifschultz, initiated a surveillance of defendant. They saw the three missing cartons on the rear part of his trailer when defendant returned to Lifschultz to make a pickup unrelated to the morning delivery. After defendant had pulled away from the terminal and turned the first corner, he stopped the truck, went to the tailend thereof, and closed the doors. Defendant then continued to a fruit and vegetable market where he turned around a corner into an alleyway, stopping at the rear of the market.

While being closely observed by the agents and Mr. Sulli, defendant removed two of the three cartons from the tailend of the truck and took them into the market's storeroom. While defendant was carrying the second carton into the storeroom, the two FBI agents began running down the alley. When they reached ⸍ the truck, they looked at the label on the one carton which still remained, and observed that it had been consigned by Goldblatt Brothers, Rockford, Illinois, to George E. Keith, Brockton, Massachusetts.

■ In determining whether the officials had probable cause for the arrest, we consider the fact that they knew of defendant's failure to deliver the three cartons of shoes to Lifschultz after he had had two additional opportunities to observe their presence on the tailend of the truck. Instead of so doing, defendant drove some distance to a fruit and vegetable market and unloaded two of the three cartons. The agents also had observed the label on the remaining carton. They were entirely justified in concluding the three cartons were in the process of being misappropriated from the authorized place of delivery, and that defendant was committing an offense in their presence.

In a recent case involving many similar circumstances, we held the agents had had probable cause to make the arrest. United States v. Nori, 7 Cir., 352 F.2d 910. We held there as we do here, that Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, was and is readily distinguishable.

We hold there was no error in denying defendant's motion to suppress the three cartons of shoes as evidence in this case.

■ We consider now the issues raised as to venue. There is no dispute that venue is an essential element to be proved by the Government. However, venue need not be proved by direct evidence. It may be established, as any other facts, by the evidence as a whole or by circumstantial evidence. Holdridge v. United States, 8 Cir., 282 F.2d 302, 305; Hill v. United States, 9 Cir., 284 F.2d 754, 755, and Weaver v. United States, 5 Cir., 298 F.2d 496, 497.

We have held "The general rule governing proof of venue is that there need be no positive testimony that the violation occurred at a specific place, but that it is sufficient if it can be concluded from the evidence as a whole that the act was committed at the place alleged in the indictment." United States v. Karavias, 7 Cir., 170 F.2d 968, 970.

■ During the presentation of the Government's evidence, there were several direct references to Chicago as being the location of the incidents described by the witnesses. Agent Parfet told of working in Chicago on May 14, 1964, and of going to the Lifschultz Terminal located in Chicago. In addition, there were many references in the testimony to certain streets and intersections. Most of these streets are well known Chicago streets. It is almost impossible to believe that the numerous streets and intersections referred to in the testimony could possibly have been located in any city other than Chicago.

We hold, under the circumstances of this case, that venue was proved to be in

the Northern District of Illinois. We therefore do not reach the question of whether the Court abused its discretion in permitting the Government to reopen its case so that venue could be proved.

It seems inexcusable that this Court's time should be spent searching the record in great detail in order to determine whether venue in a criminal case has been proved. Possibly a crash program for recently acquired members of prosecution staffs might be held in order to emphasize some fundamentals in the trying of criminal cases.

■ The remaining point raised by defendant is that it was error to permit surprise to be used as an excuse to present what is claimed to be otherwise inadmissible evidence. The reference is to the testimony of witness Louis Gil. Gil was a clerk in the fruit and vegetable market where defendant was arrested. Special agent Lee testified the defendant admitted having had a conversation with Gil with reference to dropping off the cartons at the fruit market. On the stand, Gil denied having had any such conversation. The Government claimed surprise. The prosecutor had assumed that Gil's statement would be the same as the statement he had given the day before in the United States Attorney's office. Gil finally admitted that he previously had stated the defendant had asked him to remove the labels from the cartons. Testimony showed that one of the cartons found in the market had cut marks around the label and a knife lying on its top.

We hold there was no reversible error in permitting the Government, under a claim of surprise, to question witness Gil as to his previous inconsistent statement.

As far as we can ascertain from reading this record, defendant never explained how a pair of shoes from one of the three cartons ended up in the cab of his truck.

The judgment of conviction is

Affirmed.